UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRYAN BOYLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00941-SEP |
| ) | |
| BRANDIN NEIL, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant City of St. Louis's Motion to Dismiss. Doc. [26]. For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

The Court accepts as true the following well-pled facts in Boyle's Amended Complaint. Boyle alleges that in August 2019, he visited a gas station to buy food and drink. Doc. [21] ¶ 7. While waiting to pay for his items, Boyle noticed Brandin Neil, a St. Louis police officer, "dressed in regular clothing but equipped with a taser and handcuffs." *Id.* ¶¶ 8, 23. Boyle, who was interested in becoming a police officer asked Neil out of curiosity: "What are you?" *Id.* ¶ 9. In response, Neil "pushed" Boyle "in the chest and pointed a taser at him. He then pushed Mr. Boyle in the chest a second time." *Id.* ¶ 11. After that, Neil punched Boyle "in the face multiple times with metal handcuffs, using them as brass knuckles against" Boyle's face which caused Boyle to bleed from his forehead. *Id.* At no time during the assault did Boyle strike Neil back. *Id.* ¶ 12. Boyle then attempted to deescalate the situation "by explaining that he meant no harm by his question" and "that he respected and admired police officers." *Id.* ¶ 13. Despite this attempt, Neil grabbed Boyle by the head and placed him in a chokehold, causing Boyle to fall. *Id.* ¶¶ 14-15. While the two fell, Neil "grabbed a metal rod from where store items were hanging and used it against" Boyle. *Id.* ¶ 15. Neil kept Boyle in a choke, and Boyle had difficulty breathing. *Id.* ¶ 16. Eventually additional police officers arrived on scene, and Boyle was taken to the emergency room. *Id.* ¶¶ 17-19.

Boyle contends that "Neil effected an arrest" of Boyle "without probable cause utilizing . . . excessive and abusive force tactics previously sanctioned by Defendant City of St. Louis

officers and leadership." *Id.* ¶ 25.  For example, Boyle alleges that in May 2019, "while at a downtown bar in St. Louis, Defendant Neil, while employed as a City of St. Louis police officer and engaged in his duties as an officer, become angry and physically assaulted Mr. Matt Lamarr." *Id.* ¶ 27.  "Defendant Neil tackled both Mr. Lamarr and his companion Ms. Abbey Busch to the ground." *Id.* ¶ 28.  "[T]he attack was without provocation;" neither person "had broken any law, nor had either of them did or said anything to warrant the physical assault." *Id.* Later that month, Lamarr and Busch reported the incident to the St. Louis Police Department. *Id.* ¶ 29.  An "Allegation of Employee Misconduct Report" was prepared, though "no disciplinary action was taken against Neil." *Id.* ¶ 30.  Further, "[n]o available documented additional supervision nor training was mandated" for Neil. *Id.* ¶ 31.

Boyle alleges that the City "maintains unofficial customs and fails to train and supervise its officers such that department-wide practices have evolved that are unreasonable and deliberately indifferent to citizens subject to arrest and said practices have become pervasive and accepted." *Id.* ¶ 32.  Boyle says that the following customs exist within the St. Louis Police Department:  "(a) using unreasonable and excessive force . . . , (b) physically assaulting or abusing arrested persons, (c) . . . arresting persons without probable cause . . . , (d) failing to properly train and instruct officers on proper conduct, (e) failing to adequately discipline officers . . . and, (f) failing to adequately investigate complaints of officer misconduct . . . ." *Id.* ¶ 33. Boyle supports the existence of these unofficial customs with five examples other than the two instances involving Neil alleged above:  the 2015 death of Nicholas Gilbert "at the hands of six St. Louis City police officers who restrained him face down in a holding cell for 15 minutes," (2) a text message conversation between St. Louis City police officers Christopher Myers and Dustin Boone during protests in 2017 reveling in the opportunity to "bea[t] the hell out of these sheads,"[1] and observing that "[t]he bosses are being a little more lenient with the use of force by us," (3) the June 2021 conviction of Boone for deprivation of rights under color of law related to the 2017 protests,[2] (4) the statement of a St. Louis City police commander "[r]elating to the same 2017 protests" that the police "'owned the night' after several individuals were badly beaten," and (5) the St. Louis City Circuit Attorney's creation of an "exclusion list," which "is comprised

---

[1] The Court understands "sheads" to be a contraction of an expletive and the word "heads."

[2] The Court takes judicial notice that Myers likewise pleaded guilty to a criminal charge arising from the 2017 protests.  *See* Docs. [610], [613], *United States v. Myers*, 4:18-cr-00975-JAR-3 (Mar. 15, 2022).

2

of St. Louis City officers the Circuit Attorney's Office will not allow to pursue criminal charges due to 'credibility' and 'integrity' reasons." *Id.* at ¶ 34.

In July 2021, Boyle filed this case, alleging various federal- and state-law claims against Neil and the City of St. Louis based on the foregoing allegations. Doc. [1]. Boyle later filed an Amended Complaint, Doc. [21], and the Court gave him leave to do so, Doc. [23]. In his Amended Complaint, Boyle levies against the City a single 42 U.S.C. § 1983 municipal-liability claim. The City moves to dismiss the sole claim against it for failure to state a claim, and the parties have fully briefed the motion. Docs. [26], [27], [33], [39].

## STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task requiring the court to "draw on its judicial experience and common sense." *Id*. at 679, 682. The factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party." *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citation omitted). But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although courts must accept all factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

## DISCUSSION

In Count III of the Complaint, Boyle brings a § 1983 municipal-liability claim against the City based on Neil's alleged violation of Boyle's constitutionally protected rights. "A municipality may be held liable for a constitutional violation under section 1983 if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citation and internal quotation marks omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

First, Boyle has not attempted, and thus fails, to identify an official municipal policy from which Neil's alleged conduct resulted. Thus, the Court turns its attention to the second possible *Monell* claim, unofficial-custom liability. To state a claim for custom liability, Boyle must plead facts demonstrating:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (citation omitted).

Boyle's allegations supporting the existence of unconstitutional customs include the 2015 death of a man while in police custody, three statements made by three different police officers during protests in 2017, the criminal convictions of two of those police officers, the Circuit

4

Attorney's creation of an "exclusion list," and a single, prior complaint against Neil, in addition to Boyle's own alleged injury.  The Court notes that the alleged statements of officers Myers, Boone, and O'Toole, as well as Myers and Boone's criminal convictions "relat[ed] to the same 2017 protests." Doc. [21] at ¶ 34.  Thus, the Complaint alleges, at most, five separate occurrences which Boyle says support his claim.  But taken together, the death of a single person in police custody in 2015, followed by acts and three statements in 2017 that resulted in two criminal convictions, the Circuit Attorney's creation of an "exclusion list" in 2018, and the two episodes of Boyle's alleged misconduct are far from a "continuing, widespread, persistent pattern" of the kind that could constitute a custom for the purposes of *Monell*.  *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998).  Nor do such allegations establish a "pattern of unconstitutional conduct [that is] so pervasive and widespread so 'as to have the effect and force of law.'" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)) (holding that two or three instances a year apart is not a custom); *see Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 896 (E.D. Mo. 2019) (fourteen instances in six years is not a custom).  Thus, Boyle fails to state a *Monell* custom claim.

        Third, and finally, Boyle fails to plausibly allege that the City failed to train and supervise.  To state a claim for failure to train or supervise, Boyle must allege facts sufficient to show: "(1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; (4) proximate cause of the plaintiff's injury." *Ball-Bey*, 415 F. Supp. 3d. at 900 (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)); *see also City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

        In his complaint, Boyle pleads no facts about the training Neil did or did not receive, other than the allegation that "[n]o available documented additional supervision nor training was mandated" after an earlier complaint was filed against him.  Doc. [21] at ¶¶ 29-31.  And even if Neil in fact received no training or additional supervision after a complaint was made against him, that fact alone would shed no light on whether the City believed Neil had committed the prior, alleged misconduct.  It would also say nothing about the training that the City provided or failed to provide to Neil.  Boyle does not include any facts as to what the police department's

5

training program includes or does not include.  "Without facts about the training [Neil] did or did not receive, [Boyle] fails to sufficiently plead that a failure to train or supervise caused the constitutional violation."  *Ball-Bey*, 415 F. Supp. 3d at 900.  Further, for the same reasons that Boyle's five instances of purportedly similar conduct fail to establish a pattern or practice of unconstitutional acts, those instances also fail to establish a pattern of constitutional violations as to which policy-making officials could be charged with knowledge of a failure to train their employees.  *Canton*, 489 U.S. at 390.  Thus, Boyle fails to sufficiently plead a failure-to-train claim against the City.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis's Motion to Dismiss is **GRANTED**.  Doc. [26].

Dated this 30th day of September, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE